**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMERCO,<br><br>  Plaintiff,<br><br>v.<br><br>National Union Fire Insurance Company<br>of Pittsburgh, PA,<br><br>  Defendant. | CV 13-2588-PHX-PGR<br><br>**ORDER** |

Before the Court are Defendant's motion to dismiss (Doc. 5) and Plaintiff's motion for partial summary judgment (Doc. 8 ). The Court held oral argument on April 22, 2014. For the reasons set forth herein, the Court will grant Defendant's motion to dismiss.

### BACKGROUND

Defendant National Union Fire Insurance Company ("National Union") issued Directors, Officers and Corporate Liability Insurance Policy #561-59-34 to Plaintiff AMERCO, covering the period from July 23, 2002, to July 23, 2003. (Doc. 5-1, Ex. A.) The Policy covered certain loss to AMERCO, including loss arising from securities claims against the company and from claims against its directors or officers. (*Id.*)

Two provisions of the Policy are at issue here. Exclusion 4(I) excludes coverage for

> any Loss in connection with a Claim . . . by any security holder of the company, whether directly or derivatively, unless such security holder's claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company.

Endorsement 13 ("Family Exclusion") excludes

> any Loss in connection with any Claims(s) . . . brought by any security holder of the Company, whether directly or derivatively, unless such Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any member of the Shoen family.

In September 2002, Paul Shoen, a family member and former AMERCO director, brought an action in the Nevada state court, alleging securities violations against AMERCO's directors and officers. (*See* Doc. 9, ¶ 12.) AMERCO tendered a request for coverage to National Union, which National Union denied based on the exclusions just noted. AMERCO does not contest this decision. (*Id.*, ¶29.)

After the Shoen action was filed, two more actions were filed in the Nevada state court, one by Belec and one by MS Management, neither of which were Insureds under the National Union policy. (*Id.*, ¶ 12.) In February 2003, Belec filed a motion to consolidate his case with MS Management case. (*Id.*, ¶ 13.) The Nevada state court *sua sponte* consolidated all three actions—Shoen, Belec, and MS Management. (*Id.*, ¶¶ 14–15; Doc. 5-1, Ex. F.) The court noted that it did "not have the power to merge the complaints or claims for relief." (Doc. 5-1, Ex. F at 2.)

On March 26, 2003, National Union denied coverage for the Belec and MS Management actions. National Union informed AMERCO:

> We have reviewed the dockets for the *Belec*, *Shoen* and *MS Management* matters and it appears that these matters have all been consolidated under the *Shoen* matter (referred to herein as the "Consolidated Action"). Therefore, it appears that the Consolidated Action is being brought with the assistance of, active participation of and intervention of a member of the Schoen Family. Additionally, Paul Schoen is a former director of the Company and thus is an Insured under the Policy. Accordingly, the provisions of Exclusion 4(i) and Endorsement No. 13 preclude coverage for these matters.

(Doc. 5-1, Ex. B.)

In April 2003, two other actions were filed against AMERCO's directors, by Glenbrook Capital and Alan Kahn. Neither Glenbrook nor Kahn were Insureds under the National Union policy. (*See* Doc. 9, ¶¶ 18–19.)

- 2 -

1   On May 5, 2003, Shoen filed a Notice of Intent to File Merged Complaint, with the consolidated complaint superceding the individual complaints. (Doc. 1-1, ¶ 9; Doc. 5-2, Ex's G, H.) The plaintiffs agreed to work together, through counsel, to prosecute their merged claims in the Consolidated Action by establishing a "Litigation Committee" to "distribute work and avoid duplication" of efforts. (Doc. 5-2, Ex. H.) Shoen's attorney was designated "Co-Lead Counsel" for the Consolidated Action and given responsibility for "determining litigation strategy, assigning work, entering into agreements and stipulations with Defendants, initiating and taking discovery, supervising the drafting of pleadings and motions, and conducting the trial and any appeals." (*Id.*)

On May 8, 2003, the Nevada trial court granted the defendants' motions to dismiss consolidated complaint. (*Id.*, ¶ 20.)

On May 19, 2004, National Union denied AMERCO's claim for coverage regarding the Kahn and Glenbrook actions, explaining:

> Due to Paul Schoen's instigation of the Consolidated Action by first filing the state derivative claim and his continued involvement and assistance with the Consolidated Action, National Union maintains that coverage for defense and indemnity of the Consolidated Action is precluded by Exclusion 4(i) and Endorsement No. 13.
>
> Upon consolidation of the *Belec*, the *MSMC*, the *Kahn*, and the *Glenbrook* actions with the *Shoen* action, the *Belec*, *MSMC*, *Kahn* and *Glenbrook* actions' independence from Mr. Shoen clearly discontinued, and, therefore it remains National Union's position that there is no coverage. . . .

(Doc. 10-7, Ex. G.)

On July 13, 2006, the Nevada Supreme Court reversed the lower court's dismissal and held that the plaintiffs should have been allowed to amend their pleadings. (Doc. 5-2, Ex. K.) It allowed the remaining plaintiffs the opportunity to file separate amended complaints on remand. (*Id.*) The plaintiffs, however, filed a single amended consolidated complaint. (Doc. 5-1, Ex. C.) Thereafter, the plaintiffs proceeded jointly, with Paul Shoen's counsel acting as lead counsel.

- 3 -

1    In 2012, the parties in the Nevada actions settled the cases, and the plaintiffs took
2    nothing by way of settlement. (*See* Doc. 9, ¶ 24.) According to AMERCO, in defending the
3    actions it incurred costs exceeding $9 million. (*Id.*, ¶ 26.)

4    On November 7, 2013, Plaintiff filed a complaint in Maricopa County Superior Court
5    alleging breach of contract and bad faith and seeking declaratory relief. (Doc. 1-1.)
6    Defendant removed the case on December 18, 2013. (Doc. 1.)

## DISCUSSION

National Union moves to dismiss AMERCO's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In deciding a motion to dismiss under Rule 12(b)(6), the court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). However, the court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Arizona law governs the interpretation of the Policy. *See National Fire Ins. Co. of Hartford v. Lewis*, 898 F.Supp.2d 1132, 1139 (D.Ariz. 2012). Courts construe an insurance contract according to its plain and ordinary meaning. *Id. See Stearns-Roger Corp. v. Hartford Acc. & Indem. Co.*, 117 Ariz. 162, 165, 571 P.2d 659, 662 (1977) ("The terms of the insurance policy should be given a practical and reasonable construction which support the intent of the parties.").Unambiguous provisions must be given effect as written. *Benevides v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 184 Ariz. 610, 613, 911 P.2d 616, 619 (1995). "Only

- 4 -

1 when an insurance contract is actually ambiguous will a court employ other canons of construction, such as construing the ambiguity against the insurer, or favoring the protection of the interests of injured victims."*Lewis*, 898 F.Supp.2d at 1139 (citation omitted). "When policy language is unambiguous, the court does not create ambiguity to find coverage." *Sec. Ins. Co. v. Andersen*, 158 Ariz. 426, 428, 763 P.2d 246, 248 (1988).

"Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Lewis*, 898 F.Supp.2d at 1139 (quoting *Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 46, 13 P.3d 785, 788 (App. 2000).

**I.     The Policy exclusions**

National Union argues that AMERCO "cannot state a claim for breach of contract or insurance bad faith because AMERCO's alleged loss is not covered under the plain, unambiguous language of its National Union insurance policy." (Doc. 5 at 1.) National Union argues that the claims in the Nevada Consolidated Action were not prosecuted totally independently of Paul Shoen, totally without Shoen's assistance, and totally without Shoen's active participation, and therefore the exclusion provisions apply.

AMERCO counters that the state court's consolidation order was the sole basis for National Union's denial of coverage. According to AMERCO, the fact that Shoen's case was consolidated with the other state plaintiffs was not a sufficient basis for National Union to deny coverage under the Policy exclusions. AMERCO also argues that National Union is estopped from asserting any other basis for denial beyond the consolidation order.

Both parties cite a series of cases supporting their arguments. AMERCO relies principally on two cases from the Seventh Circuit, *Level 3 Comm'ns, Inc. v. Fed. Ins. Co.*, 168 F.3d 956 (7th Cir. 1999), and *Miller v. St. Paul Mercury Ins. Co.*, 683 F.3d 871 (7th Cir. 2012).

*Level 3* involved a securities fraud lawsuit against an insured entity in which the only

- 5 -

insured plaintiff, out of a total of eight plaintiffs, was a former director of a subsidiary of the insured entity. 168 F.3d at 957. The insured plaintiff joined the lawsuit six months after it was filed. *Id.* The exclusion clause at issue precluded coverage for any "Claim made against an Insured Person" provided that the Claim was "brought or maintained by or on behalf of any Insured." *Id.* Explaining that strict application of the clause would create the "odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it," the court ruled that the claims of the former director were not covered, but that the claims of the remaining plaintiffs were covered. *Id.* at 960.

The court also noted that the policy contained an allocation clause allowing for the appropriate proportion of the settlement to be allocated to the uninsured plaintiffs. *Id.* While the presence of an insured party "could conceivably contaminate the entire litigation," the court found the allocation clause of the contract dispositive because it "dealt with this problem in another way, by requiring allocation of covered and uncovered losses." *Id.* Although the insured in *Level 3* represented a small percentage of the claim, the court noted that the "allocation provision automatically takes care of the case in which an Insured Person is the primary suitor" by reducing the insurance company's exposure, rather than barring all defense. *Id.*

The court reached the same conclusion in *Miller*, holding that the insured vs. insured exclusion did not bar coverage of the non-insured parties' claims where one or more of the plaintiffs were an insured. Five parties sued Strategic Capital Bancorp, Inc. (SCBI) and two of its former directors and officers in state court. 683 F.3d at 873. Three of the five plaintiffs were former directors of SCBI or otherwise found to be insured parties. *Id.* The remaining two plaintiffs did not qualify as insureds under the policy. *Id.* SCBI notified St. Paul Mercury Insurance Company of the claims and requested coverage of defense costs and indemnity coverage under the policy issued by St. Paul to SCBI. *Id.* St. Paul, relying on the insured vs. insured exclusion, refused to defend or indemnify the insureds. *Id.*

The insured v. insured clause in the St. Paul policy cancelled its duty to defend or indemnify for "Loss on account of any Claim made against any Insured . . . brought or maintained by or on behalf of any Insured or Company in any capacity." *Id.* As in *Level 3*, the policy also contained allocation clause providing that the "amount [of covered and uncovered losses] shall be allocated between [the] covered Loss and uncovered loss based upon the relative legal exposures of the parties to covered and uncovered matters." *Id.*

St. Paul argued that it had no duty to defend or indemnify any part of the lawsuit, including the claims brought by plaintiffs who were not insureds under the policy. *Id.* The Seventh Circuit, relying on *Level 3*, again ruled that when a lawsuit has both insured and non-insured plaintiffs, the allocation clause applies to provide indemnity for losses on claims by non-insured plaintiffs but not for losses on claims by insured plaintiffs. *Id.*

In *Miller* the court distinguished *Sphinx International Inc. v. National Union Fire Insurance Co.*, 412 F.3d 1224 (11th Cir. 2005), a case cited here by National Union. *Sphinx International* dealt with a lawsuit that combined claims of insured and non-insured plaintiffs. The primary plaintiff in the underlying suit was a former director of the company and thus an insured for purposes of the directors and officers policy. On the same day that the insured plaintiff filed a securities class action suit against Sphinx, he published a nationwide notice soliciting other Sphinx shareholders to join his suit. He then amended his complaint to add as plaintiffs the shareholders who accepted the invitation.

The relevant policy barred coverage of claims brought

> [b]y or at the behest of . . . any DIRECTOR or OFFICER . . . unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER of the COMPANY or any affiliate of the COMPANY.

Because the former director in *Sphinx International* actively solicited the other plaintiffs, the court found that the "plain and clear" language of the insured vs. insured exclusion barred the entire lawsuit.

The *Miller* court, reviewing the decision in *Sphinx*, explained that, "We have no disagreement with that reasoning, but we find no similar language in the St. Paul policy that would defeat coverage for a claim by a non-insured plaintiff depending on whether she acted independently of insured plaintiffs." *Miller*, 683 F.3d at 879.

National Union also cites *PowerSports, Inc. v. Royal & Sunalliance Ins. Co.*, 307 F.Supp.2d 1355, 1359–60 (S.D.Fla. 2004). *PowerSports* involved a claim for defense and indemnification of an underlying suit brought by the company's founders and former directors against the current board of directors. The insurer denied coverage on the basis of the insured vs. insured exclusion in the policy, and the company sued. The court found the case more similar to *Sphinx* than to *Level 3* because the former directors, who were "Insured Persons" under the policy, were plaintiffs at the outset of the underlying action, so the action was uncovered from the date it was filed.

National Union also cites *Stratton v. National Union Fire Ins. Co.*, No. Civ.A.03–CV–12018–RGS, 2004 WL 1950337 (D.Mass. September 3, 2004). The plaintiffs in *Stratton* were former directors and officers of Mariner Health Group ("MHG"). *Id.,* at *1. MHG had a Directors and Officer Liability policy with National Union. *Id.* The policy contained Exclusion 4(i), providing that "[t]he Insurer shall not be liable . . . for Loss in connection with a Claim made against an Insured . . . which is brought by any Insured or by the Company, . . . or which is brought by any security holder of the Company . . . unless such security holder's Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company . . ." *Id.*, at *2. Plaintiff brought an action seeking a declaratory judgment that National Union was obligated to pay defense costs and provide indemnity coverage for two state court lawsuits. *Id.*, at *1.

One of the state court actions, the "Kellett" lawsuit, was brought by Stiles and Samuel Kellett, former directors of MHG, among other entities. *Id.*, at *6. Plaintiffs in *Stratton*

- 8 -

conceded that Exclusion 4(i) defeated coverage for claims brought by Stiles and Samuel Kellett. *Id.* They argued, however, that the lawsuit, as it affected the other Kellett entities, was covered by the policy. *Id.* They contended "that any other result would be unfair, because coverage under a directors and officers policy would be completely avoided whenever a lawsuit brought by an uninsured party was consolidated with one brought by a covered plaintiff." *Id.*

The court rejected this argument, finding that it "ignores the strict language of the policies." *Id.* The court explained that,

> The Kellett plaintiffs (those separate from Stiles and Samuel) are security holders in MHC and their claims are brought, without differentiation, as part of the claims of Stiles and Samuel. The claims thus cannot be said to be 'instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured." Consequently, the claims of the Kellett lawsuits are not covered by either policy.

*Id.*

The court rejected the plaintiffs' argument that in some circumstances application of the exclusion could cause an "unfair" result. *Id.* n.14. The court explained that "a court will not invalidate on public policy grounds a limitation in an insurance policy that an insurer is not required to offer or a company required to purchase." *Id.*

Applying the principles announced in these cases, the Court finds that the policy exclusions apply, and coverage did not exist for the cases that were consolidated into the Nevada lawsuit.

AMERCO's principal argument against application of the exclusion clause is the fact that the underlying state cases were consolidated by order of the Nevada court. AMERCO insists that the only fact National Union relied on in denying coverage was the Nevada state court's consolidation order. AMERCO contends that "a unilateral consolidation by the trial court for case management purposes" cannot have the effect of negating coverage under the Policy and runs contrary to AMERCO's reasonable expectations. (Doc. 8 at 10.) This

argument ignores the fact that on remand from the Nevada Supreme Court, the plaintiffs again filed a consolidated complaint, and the litigation continued with Shoen's active participation.

AMERCO argues that National Union, having based its decision on the fact of consolidation, has waived all other grounds for denying liability. (*Id.* at 6–7.) This argument is unpersuasive. National Union does not seek to deny liability on a new ground. National Union expressly cited Exclusion 4(i) and Endorsement No. 13, in its March 26, 2003, denial letter and again in its denial letter of May 19, 2004. The consolidation of the cases, initiated by the state court and continued by the plaintiffs, resulted in claims by security holders that were not continued totally independent of Shoen and totally without Shoen's assistance or participation.

As noted above, *Miller* distinguished the result in *Sphinx* on the basis of the same policy language at issue here, which "would defeat coverage for a claim by a non-insured plaintiff depending on whether she acted independently of insured plaintiffs." *Miller*, 683 F.3d at 879. There is no ambiguity in this policy language, which, as National Union argues, contemplates a situation in which a Shoen family member actively participates in litigation against AMERCO, as Paul Schoen did here. In addition, the policies at issue in *Level 3* and *Miller* contained only an insured versus insured exclusion; they did not contain an additional provision barring coverage for claims that were not totally independent of those brought by an insured under the policy. *See Level 3*, 168 F3d 957.

Moreover, as in *Sphinx* and *PowerSports*—and in contrast to *Level 3*—an insured (Paul Shoen), was a plaintiff at the outset of the underlying case. Shoen's case was the first filed. When the state court ordered the later filed cases to be consolidated with Shoen's, Shoen took a leading role in litigating the action, and when the Nevada Supreme Court reversed the court's order dismissing the case, the plaintiffs again filed a consolidated complaint. Under these circumstances the claims were not pursued independently of Shoen's

participation. Given the unambiguous language of Exclusion 4(i) and Endorsement 13, this is not the "odd result" that concerned the court in *Level 3* but rather the outcome contemplated in the Policy. *See Alanco Technologies, Inc. v. Carolina Cas. Ins. Co.*, No. 04-CV-789-PHX-DGC, 2004 WL 5653220, at *2 (D.Ariz. September 20, 2004) ("This Court concludes, consistent with Arizona law, that exploring the intent of the exclusion is not necessary when the language is plain. The [insured v. insured] exclusion is enforceable according to its plain terms simply because that is the agreement struck by the parties.").

Another aspect of the Policy language distinguishes *Level 3* and *Miller* from this case. In *Level 3* the court noted that "[t]he presence of an Insured in the litigation could conceivably contaminate the entire litigation, particularly if the insured were a current officer or director of the defendant *and* the principal plaintiff." 168 F.3d at 960. That is the scenario present here. The court explained, however, that "the contract deals with this problem in another way, by requiring allocation of covered and uncovered losses." *Id.* According to the allocation provision, if both sorts of loss occur "because a Claim against the Insured Persons includes both covered and uncovered matters, . . . the Insureds and the [Insurance] Company shall use their best efforts to agree upon a fair and proper allocation of such amount between covered Loss and uncovered loss."[1] *Id.*

AMERCO argues that allocation is the appropriate result here, notwithstanding the presence or absence of an allocation provision. (*See* Doc. 15 at 10 & n.2.)  However, other courts have found the presence of an allocation to be a dispositive factor. *See Federal Ins. Co. v. Infoglide Corp.*, No. A-05-CA-189-AWA 2006 WL 2050694, at *5 (W.D.Tex. July 18, 2006) ("[T]he decisive fact in *Level 3* was the existence of an allocation clause that

---

[1] Similarly, in *Miller*, 683 F.3d at 877, the allocation clause provided that, "If on account of any Claim . . . *the Insureds incur an amount consisting of both Loss covered by this Policy and loss not covered by this Policy because the Claim includes both covered and uncovered matters,* such amount shall be allocated between covered Loss and uncovered loss based upon the relative legal exposures of the parties to covered and uncovered matters."

- 11 -

1  clearly contemplated cases in which covered claims could be combined with non-covered
2  claims, and the absence of that sort of clause was one of the reasons why *Sphinx* came out
3  differently than *Level 3*."); *Home Federal Savings and Loan Ass'n of Niles v. Federal Ins.
4  Co.*, No. 4:06-CV-3053, 2007 WL 2713060, *5 (N.D.Ohio September 14, 2007) ("This Court
5  finds that when interpreted under their plain meaning and especially after considering the
6  allocation provision, the policy covers the non-insured plaintiffs' claims."); *Megavail v.
7  Illinois Union Ins. Co.*, Civ. No. 05-1374-AS, 2006 WL 2045862, at *3 (D.Or. July 19, 2006)
8  (finding that the allocation clause in the policy required allocation between covered and
9  uncovered losses, rather than barring all recovery).

While AMERCO argues that allocation is permitted even without an express allocation provision, the Court finds this argument unpersuasive given the unambiguous language of the exclusion provisions.

## II.   Information post-dating denial decisions

National Union cites court documents from the Nevada action, attached as exhibits to its motion to dismiss, showing that "Shoen assisted and actively participated in the prosecution of all claims in the Consolidated Action by agreeing that his counsel would direct the litigation strategy; filing joint briefs; submitting a joint witness list; and designating a joint expert." (Doc. 5, Ex's C–Y.) National Union also notes that during the underlying state court litigation, AMERCO took the position that the plaintiffs, including Paul Shoen, had "joined together" to prosecute the action and should be treated as a single entity.[2] (Doc. 5 at 2.) National Union argues that, "[h]aving successfully argued in the underlying action that the plaintiffs were not independent, AMERCO cannot now claim the contrary." (*Id.*)

---

[2] The record shows, for example, that AMERCO argued that the litigation was a "strike suit" and a "family feud being fought in the guise of a shareholder derivative litigation by Paul and Sam Shoen"; that plaintiff Belec was a "stooge" for the Shoen family; and that plaintiff Glenbrook Capital was controlled by Paul Shoen's lawyer, investment partner, and best friend. (Doc. 5, Ex's U, X.)

National Union asks the Court to take judicial notice of these public documents, while AMERCO objects to their use and moves to strike several of the exhibits, arguing that National Union's denial decision must be judged "based only on the one fact relied upon by National Union at the time of the denial," and therefore National Union "may not refer to any evidence generated in the underlying action, except for the Nevada court's *sua sponte* consolidation order." (Doc. 11 at 6.)

The Court need not consider this later information to conclude, for the reasons already discussed, that the Policy's "totally independent" exception was triggered by the fact that the cases were consolidated and pursued with Paul Shoen's active participation. National Union explicitly stated these facts as the basis for its decision in both of its letters denying coverage. (Doc. 5-1, Ex. B; Doc. 10-7, Ex. G.)

**CONCLUSION**

According to the unambiguous language of the Policy, the security holders' claims in the Nevada actions were excluded unless their claims "were instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any member of the Shoen family" or "any Insured or the Company." Because the cases were consolidated, initially by court order and thereafter, upon remand, when the plaintiffs again filed a merged complaint, the action was continued with the assistance and active participation of Paul Shoen. Because there was no coverage under the Policy, AMERCO cannot state a claim for breach of contract or bad faith.[3]

Accordingly,

---

[3] The Court also dismisses the AMERCO's declaratory judgment claim as a "duplication of the breach of contract claim." *HM Hotel Properties v. Peerless Indem. Ins. Co.*, 874 F.Supp.2d 850, 855 (D.Ariz. 2012).

1    **IT IS ORDERED** granting National Union's Motion to Dismiss (Doc. 5) and denying
2    AMERCO's Motion for Partial Summary Judgment (Doc. 8). The Clerk of the Court shall
3    enter judgment for Defendant.

   DATED this 20th day of May, 2014.

*/s/ Paul G. Rosenblatt*
Paul G. Rosenblatt
United States District Judge